UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TATIANA ZAKHAREVSKAIA,**

   **Plaintiff,**            Case No. 2:04-cv-1228
                    JUDGE GREGORY L. FROST
   **v.**                 Magistrate Judge Mark R. Abel

**ONLINE COMPUTER**
**LIBRARY CENTER, INC.,**

   **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant's motion for summary judgment (Doc. # 26), Plaintiff's memorandum in opposition (Doc. # 31), and Defendant's reply memorandum (Doc. # 34). Also before the Court is Defendant's motion to strike several of Plaintiff's summary judgment exhibits and related briefing (Doc. # 33), Plaintiff's memorandum in opposition (Doc. # 35), and Defendant's reply memorandum (Doc. # 36). For the reasons that follow, this Court finds that the summary judgment motion is well taken and the motion to strike is moot.

### I. Background

Defendant, Online Computer Library Center, is a nonprofit computer library service that maintains a research database for member libraries. Since February 2001, Plaintiff, Tatiana Zakharevskaia, had worked for Defendant in various capacities, first as a senior systems analyst and then as a senior systems engineer. Her primary duty was to work on converting the existing

1

database system to an Oracle-based database.[1]

In 2002, Mark Logsdon assumed managerial responsibilities over Plaintiff. Logsdon expressed concerns over Plaintiff's performance and technical competence and, in a January 2003 performance evaluation, Logsdon gave Plaintiff a poor performance evaluation, scoring her overall performance a "1" on a three-point scale, with a "3" being the top mark. He then developed a 90-day performance improvement plan for Plaintiff, which he planned on delivering to her during the week of February 3, 2003. This plan set forth various priorities and goals for Plaintiff and contained several specific deadlines, including a March 31, 2003 deadline for database reports and an April 1, 2003 deadline for task documentation.

On January 31, 2003, however, Plaintiff fell in Defendant's parking lot and sustained injuries necessitating physical therapy and ongoing medical care. She spoke with Logsdon the next day and informed him that she could not perform her duties that day because of her injuries. Plaintiff did not return to work until February 4, 2003. After several days of work, Plaintiff submitted a doctor's note indicating that although she could work, Plaintiff was under various physical and temporal restrictions.

Plaintiff met with Logsdon for her now-belated annual performance review on February 10, 2003. After receiving her evaluation, but before receiving her performance improvement plan (effective that same day), Plaintiff terminated the meeting. That same day, Plaintiff obtained a note from an urgent care facility that excused her from work from February 10 until February 12. She subsequently presented Defendant with a second note from another doctor

---

[1] Oracle is apparently a type of database or software platform.

excusing her from work from February 12 until February 17.

On February 17, 2003, Plaintiff returned to work but, after taking her blood pressure at the office, Plaintiff went to the emergency room. She was treated and released and did not return to work that day. On that same day, Defendant sent Plaintiff a conditional notice of FMLA designated leave form, a copy of the company's FMLA policy, a FMLA health care provider certification form, and other forms.

The next day, February 18, 2003, Plaintiff met with Logsdon and Human Resources Manager Karen Worthington to continue the performance review. Because they had not concluded the review by the end of the work day, the review was set to continue in the afternoon of the next day. On February 19, however, Plaintiff left work before the review for a doctor's appointment and was subsequently admitted into the hospital. The next day, Plaintiff's daughter sent an e-mail to a general e-mail address of Defendant and left a phone message with another employee regarding the hospitalization, but apparently neither message was reviewed until the following week.

Plaintiff was off work the week of February 24, 2003. On February 25, Plaintiff received a packet from Defendant that included her annual performance appraisal, the performance improvement plan,[2] and second copies of the FMLA paperwork. This packet included notice that Plaintiff's health care provider certification was due on March 4, 2003. Plaintiff responded by sending Defendant a February 27 memorandum that Defendant received on February 28;

---

[2] The Performance Improvement Plan memorandum is dated February 10, 2003 and states that it is effective from February 10, 2003 through May 10, 2003. (Doc. # 26, at 11, Performance Improvement Plan Memorandum.)

3

accompanying this document were notes related to Plaintiff's medical treatment, signed copies of the annual performance appraisal and performance improvement plan, and a doctor's note indicating a return-to-work date.[3] Plaintiff requested in this memorandum that she be permitted to take two weeks of vacation and one personal day beginning on her return-to-work date. Logsdon granted Plaintiff's request.

Plaintiff's doctors sent Defendant two FMLA certification forms on March 3, 2003, which together provided that Plaintiff was entitled to FMLA leave on February 10, on February 12, and from February 17 through March 3. Another note indicated that Plaintiff was on a time restriction of no more than 30 hours of work per week for the next two weeks (a period falling within Plaintiff's vacation). On both March 6 and 14, 2003, Defendant sent Plaintiff notices that it had granted her FMLA leave. Accompanying these notices were spreadsheets indicating Plaintiff's absences and which periods fell within FMLA leave.

On March 18, 2003, Plaintiff returned to work. She met with Logsdon the next day to discuss the performance improvement plan and various projects. They also apparently discussed her leave, resulting in her obtaining credit for some time spent at physical therapy during her vacation, as well as discussing various communication issues and future leave for medical appointments. Plaintiff was off for part of the day on March 20 for two doctor appointments, and on March 21 she again met with Logsdon and Worthington to discuss the performance improvement plan. Plaintiff then worked from March 24 through March 27, excluding several hours absence for medical appointments, and she then took a vacation day on March 28.

---

[3] The note listed an erroneous date of February 29, 2003–a date that did not exist–and was apparently meant to indicate a return to work date of March 3, 2003.

The March 31 performance improvement plan deadline for the database reports passed without Plaintiff completing her assigned project. The same occurred for the April 1 deadline for task documentation, and Plaintiff did not provide any information regarding a third component of the plan that set forth ongoing priorities with no specific deadline.[4] The plan provides that "[f]ailure to meet these performance goals could result in further corrective action up to and including termination." (Doc. # 26, at 13.) Consequently, Logsdon then consulted Worthington and other company decisionmakers, and on April 2, 2003, Defendant terminated Plaintiff's employment. Plaintiff subsequently applied for and received Social Security disability benefits as of April 5, 2003 and has not worked since.

Plaintiff later instituted the instant action on December 30, 2004. (Doc. # 1.) In an amended complaint, she asserts two causes of action: a federal claim in Count I, alleging that Defendant violated the Family and Medical Leave Act ("FMLA"), and a state law claim in Count II, asserting disability discrimination in violation of Ohio Rev. Code §§ 4112.02 and 4112.99. (Doc. # 11.) Defendant has moved for summary judgment on both counts (Doc. # 26) and has moved to strike various attachments Plaintiff has submitted as part of her response (Doc. # 33). The parties have completed their briefing, and Defendant's motions are now ripe for disposition.

---

[4] Although Defendant repeatedly states in its briefing that Plaintiff failed to report on this component of the plan, the plan itself does not impose a specific reporting date. Instead, it appears to present ongoing priorities for Plaintiff revolving around an April 2003 database implementation. (Doc. # 26, at 18, Performance Improvement Plan Memorandum, Goal 8.)

5

## II.  Discussion

### A.  Standard Involved

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The Court must therefore grant a motion for summary judgment here if Plaintiff, the nonmoving party who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to his case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of Plaintiff, who must set forth specific facts showing that there is a genuine issue of material fact for trial.  *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52.)

**B. Motion to Strike**

To support her memorandum in opposition to Defendant's summary judgment motion, Plaintiff has filed a number of exhibits. Several of these exhibits target her work performance prior to 2003. Defendant has filed a motion to strike all but one of the filed exhibits on the grounds that Plaintiff has failed to authenticate them. (Doc. # 33.) Defendant also seeks to strike those portions of Plaintiff's briefing that rely on the nine targeted exhibits. Plaintiff opposes the motion to strike on the grounds that she obtained the documents from Defendant, often through interrogatory responses, although Defendant disputes this fact in regard to two fo the exhibits.

The Court recognizes the validity of Defendant's concerns, but finds that Defendant's motion is moot because the controlling substantive analysis set forth below proves dispositive of the federal component of this action regardless of whether Plaintiff's exhibits and related argument remain in the record. In other words, because the allegedly offending material does not change the outcome, it does not matter whether it is stricken. Accordingly, the Court **DENIES AS MOOT** the motion to strike. (Doc. # 33.)

**C. Federal Claim: Retaliation**

As noted, Plaintiff asserts a single federal claim under the FMLA. Although her pleading is somewhat vague, Plaintiff explains in her memorandum in opposition that her theory of her federal claim is that Defendant retaliated against her by terminating her for taking FMLA leave.[5]

---

[5] The Court recognizes that Defendant devotes considerable attention in its briefing to other incidents, such as Plaintiff's accusations that Logsdon treated her poorly by requiring her to move offices without assistance. These other incidents–some of which appear potentially of concern to this Court–nonetheless fall outside the specific, narrow parameters that Plaintiff

(Doc. # 31, at 13-16.)

To establish a *prima facie* case of retaliation under the FMLA here, Plaintiff must prove that (1) she availed herself of a protected right under the FMLA, (2) Defendant knew of her exercise of a protected right, (3) she was adversely affected by an employment decision made by Defendant, and (4) there was a casual connection between the exercise of the protected right and the adverse employment action. *Cf. Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990). *See also DeBoer v. Musashi Auto Parts, Inc.*, No. 04-1067, 2005 WL 434526, at *3 (6th Cir. Feb. 25, 2005); *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001). Plaintiff asserts that the first elements of her *prima facie* case are "readily apparent," and this Court agrees.[6] (Doc. # 31, at 13.) This case thus turns on the final requisite element: whether there is a casual connection between Plaintiff's exercise of her FMLA rights and her termination.

To support such a casual connection, Plaintiff first points to the temporal proximity of her injury, her invocation of her FMLA rights, and her termination. She insists that the brief period between these events, when viewed in light of her years of successful job performance, raises an inference of discrimination that forces Defendant to articulate a legitimate nondiscriminatory reason for her termination. This is a weak inference that the Court shall credit

---

establishes for her FMLA claim in her memorandum in opposition (i.e., a retaliation claim based only upon her termination is the sole federal cause of action she briefs). (Doc. # 31, at 13-16.) The Court can not and will not read into a cause of action a greater scope than that actually asserted by a plaintiff. Accordingly, the Court properly confines itself to addressing only that which Plaintiff claims and not other actions that she has apparently elected to abandon.

[6] Plaintiff's analysis omits discussion of the second element, but there is no question that Defendant knew of Plaintiff's exercise of her rights under the FMLA.

simply for the purposes of argument. Thus, because only circumstantial evidence is involved, the Court must employ the familiar *McDonnell-Douglas* analysis. *DeBoer*, 2005 WL 434526, at *4 (citing *Skrjanc*, 272 F.3d at 315). Using this analysis leads to the related issues of whether Defendant has offered a legitimate, nondiscriminatory rationale for terminating Plaintiff and, if so, whether Plaintiff has then produced evidence that the alleged nondiscriminatory rationale was in reality a pretext designed to mask improper action.

But even assuming *arguendo* that Plaintiff has established a *prima facie* case, thereby creating a presumption of impropriety, the Court must conclude that her claim nonetheless fails. Timing alone is not dispositive to demonstrate pretext because "the FMLA does not give an employee who invokes the protection of the statute any greater rights to employment than the employee would otherwise have had." *Skrjanc*, 272 F.3d at 316 (citing 29 U.S.C. § 2614(a)(3)(B); *Hubbard v. Blue Cross Blue Shield Ass'n,* 1 F. Supp. 2d 867, 875 (N.D. Ill. 1998)). Thus, as in *Skrjanc*, "temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual." *Skrjanc*, 272 F.3d at 317. *See also Coulter v. Deloitte Consulting, L.L.C.*, 79 Fed. Appx. 864, 867, 2003 WL 22514343, at *4 (6th Cir. Nov. 4, 2003).

Although Plaintiff points to prior positive evaluations to support her contentions of adequate performance, she fails to credit that the facts indicate that Logsdon had decided to give Plaintiff a poor performance review and to place her on a 90-day performance improvement plan *prior to* her unfortunate injury. Instead, she focuses on the sequence in which she *received* the evaluation. This approach ignores that uncontroverted evidence indicates a decision to give Plaintiff a poor performance evaluation before her injury; Plaintiff in effect asks this Court (and

9

by extension, a reasonable juror) to conflate cause and effect with when she perceived or learned that things happened as opposed to focusing on when they happened. When Plaintiff *learned* of the events cannot replace the significance of when the events *actually happened*. Accordingly, logic dictates that no reasonable juror could regard the initial decisions to give Plaintiff a poor evaluation and to place her on a performance improvement plan as pretext for FMLA-related impropriety.

Plaintiff also attacks Logsdon's affidavit as self-serving and based on hearsay. She contends that because Defendant has not supplied this Court with affidavits from her former co-workers asserting her poor performance, there is no evidence supporting Logsdon's affidavit summarizing his inquiry into and evaluation of Plaintiff's work   Thus, Plaintiff reasons, Logsdon's affidavit fails to support Defendant's theory of the case.

This reasoning is problematic for a number of reasons. It urges this Court to find pretext based on the factfinder sitting as a super-executive. In other words, Plaintiff implicitly asks the Court to disregard Defendant's proffered reason on the grounds that the decision was based on insufficient personal knowledge. But it is not the role of this Court to act as evaluator of personnel decisions that lack discriminatory animus; there is no evidence here that Logsdon did not hold an honest belief in his conclusions or that he conducted an insufficient investigation or analysis in reaching his conclusions. Additionally, Plaintiff's contention that Defendant cannot successfully move for summary judgment because Logsdon's affidavit relies on statements made by other employees to Logsdon fails to credit that the affidavit is based in part on Logsdon's personal observation of and interactions with Plaintiff. It also fails to credit that the other employees' purported statements are not offered to prove their content, but to relate Logsdon's

state of mind as a decisionmaker charged with supervising and evaluating Plaintiff. *See Ullmann v. Olwine, Connelly, Chase, O'Donnell & Weyher*, 123 F.R.D. 237, 241-42 (S.D. Ohio 1987); *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715-16 (7th Cir. 2004); *Littlefield v. American Radio*, No. 1:03-CV-3882-RWS, 2006 WL 735048, at *6 n.4 (N.D. Ga. Mar. 20, 2006); *Harris v. TNT Logistics North America, Inc.*, No. 04-1100, 2005 WL 3577016, at *7 (C.D. Ill. Dec. 29, 2005); *Scott v. H&R Block Mortg. Corp.*, No. 04-C-373, 2005 WL 3542246, at *2 (E.D. Wis. Dec. 27, 2005).

Plaintiff also argues that Defendant's reliance on her failure to meet the performance improvement plan is invalid. She contends that the performance improvement plan was to last 90 days and that pretext is apparent because she was terminated before the expiration of this 90-day period. Thus, Plaintiff concludes, she "was not even given the opportunity to have 90 days to demonstrate she was meeting the goals outlined for her." (Doc. # 31, at 15.) What this proposition overlooks is that although the overall plan was for 90 days, the plan included various intermediate specific deadlines that Plaintiff failed to meet. By failing to meet the March 31 and April 1 deadlines, Plaintiff could not have fully complied with the performance improvement plan even if she had subsequently satisfied every remaining aspect of the plan for the remainder of the 90-day term.

It is important to note that Plaintiff is not arguing that her FMLA leave prevented her from completing the reports by the deadlines. If that were the case, then the analysis would be significantly altered. But this is not the case, because Plaintiff contends in her memorandum in opposition that she had in fact prepared at least one of the reports, "but when she tried to give it to [Logsdon], he ignored her and refused to accept it." (Doc. # 31, at 16.)

The Court has reviewed the pages from Plaintiff's deposition to which Plaintiff directs the Court to support her characterization of this event.  The deposition provides:

> Q. Did you give [the report] to [Logsdon]?
>
> A. No.  He didn't ask me to give it to him.  I visit his office a couple time, and he said he's busy.  I stay a couple time and I cried.  He keep me in the hall.  And this is Jim, he's manager on the operations support team, he look at me and ask: Why you stay here?  Because it was across from his cube.  I say: Because he all the time he treats me this way.  This is what.
>
> Q. You were standing out in the hall outside his office?
>
> A. Yes.  And he tried to do something, then if you check for my – what he said about my lifestyle, he said I interrupted every people.  It isn't true, but because he made that, I don't want to create some fact that I did it.  Because they teach me if somebody, even alone in office, it mean he's not available.  You have to ask: Are you available?
>
> And he said: No.
>
> I say again: Are you available?
>
> He say: No.
>
> I say again –
>
> Q. If he said he's not available, why would you stay?
>
> A. He said he busy.

(Doc. # 23, Zakharevskaia Dep., at 185-87.)  The deposition continued along these lines, with no testimony that Logsdon refused to accept a report, but only that Plaintiff stood outside Logsdon's office while he remained inside, apparently writing a report.  She then left, crying.  At best, this supports Plaintiff's contention that she had completed the report and that she took a preliminary step to turn it in.  But the deposition does not support that Logsdon knew of Plaintiff's purported purpose, that Plaintiff made him aware of what she wanted, that she attempted to leave the report for him, or that she attempted in any manner to actually transfer the report to her supervisor.  A refusal to meet with Plaintiff at a time of her choosing does not constitute a refusal to accept a

report.  Moreover, Plaintiff's proposed explanation targets only the March 31 report and does not speak to her failure to turn in her April 1 report, the latter of which would constitute a wholly separate ground for termination under the performance improvement plan.

Finally, Plaintiff attempts to demonstrate pretext by pointing to two other lawsuits by former employees who she asserts Defendant terminated under similar circumstances.  She has provided this Court with a pleading in which a former employee asserts that he was terminated for taking FMLA leave and a charge of discrimination in which a second former employee was fired after Defendant purportedly refused to accommodate his diagnosed disability.  These documents, Plaintiff broadly asserts, demonstrate "that when employees seek FMLA leave or accommodations for disabilities, the company has no further need for them."  (Doc. # 31, at 16.)

The Court disagrees.  The former document indeed targets a FMLA-leave situation, but presents a single anecdotal allegation that fails to mirror the factual circumstances of the instant case.  Its value in informing the analysis here is therefore limited and fails to present evidence puncturing Defendant's proffered reason for Plaintiff's dismissal.

The latter document that Plaintiff proffers–the discrimination charge–targets not a pattern of FMLA-related retaliation, but asserted disability discrimination.  As such, it does not speak to Plaintiff's federal issue and at best can only serve to inform her state law claim for failure to accommodate a disability.  This is because Plaintiff's claims involved are not fungible.  An employer can act improperly in one regard but not another, and allegations involving a distinct form of potentially improper employer conduct cannot suffice to create a reasonable inference of FMLA-related misconduct.

In summary, even assuming that Plaintiff has demonstrated a *prima facie* case of retaliation related to her FMLA leave–a proposition about which this Court has reservations in regard to the causal connection–Plaintiff has failed to point to a genuine issue of material fact related to whether Defendant's proffered reason for her termination is pretextual.  The poor performance review and performance improvement plan targeted Plaintiff's work before she was injured, and she does not assert that her injury kept her from complying with the plan; rather, she asserts that she was terminated for taking FMLA leave.  But Plaintiff has not successfully raised an issue that the proffered reason for her termination has no basis in fact, did not actually motivate Defendant's decision, or was insufficient to warrant Defendant's actions.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's sole federal claim.

### D.  State Law Claim: Disability Discrimination/Failure to Accommodate

As noted, Plaintiff also asserts a second claim in her pleading for disability discrimination under Ohio law.  But having dismissed Plaintiff's sole federal claim, the Court should presumptively not address this state law claim.  *See Jackson v. Heh*, 215 F.3d 1326, 2000 WL 761807, at *8 (6th Cir. 2000) (unpublished table decision) (referencing 28 U.S.C. § 1367 and stating that "[w]here, as here, a federal court has properly dismissed a plaintiff's federal claims, there is a 'strong presumption' in favor of dismissing any remaining state claims unless the plaintiff can establish an alternate basis for federal jurisdiction.") (citing *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1998)).  Plaintiff has failed to suggest any justification or alternative basis for exercising jurisdiction over her state law claim should her federal claim fail.  Moreover, the interest in affording a state court the opportunity to adjudicate issues of purely state law outweighs the interest in this Court of exercising continued

supplemental jurisdiction under the specific circumstances of this case. Accordingly, the Court in its discretion declines to exercise its supplemental jurisdiction over Plaintiff's remaining state law claim, *see* 28 U.S.C. § 1367(c)(3) and (4), and dismisses said claim without prejudice.

### III. Conclusion

For the foregoing reasons, the Court **DENIES AS MOOT** Defendant's motion to strike (Doc. # 33) and **GRANTS** Defendant's motion for summary judgment (Doc. # 26) in regard to Plaintiff's FMLA claim. Plaintiff's state law claim is **DISMISSED WITHOUT PREJUDICE**. The Clerk is instructed to enter judgment accordingly.

**IT IS SO ORDERED.**

    /s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE